UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Candice Howe,                                         Court File No. 17-cv-3019 (JNE/LIB)

          Plaintiff,

    v.                                            **REPORT AND RECOMMENDATION**

Barr Engineering Co., et al,

          Defendant.

---

This matter comes before the undersigned United States Magistrate Judge upon Defendants' Motions to Dismiss, [Docket No. 29, 35], and upon referral from the Honorable Joan N. Ericksen. (Order of Reference [Docket No. 43]). A hearing was held on October 27, 2017, after which the motions were taken under advisement. [Docket No. 48].

For the reasons discussed herein, it is recommended that the Defendants', Barr Engineering Co. and Barr Engineering Company General Welfare Plan, Motion to Dismiss, [Docket No. 29], as well as, Defendant, PayFlex System USA, Inc.'s, Motion to Dismiss, [Docket No. 35], be **GRANTED**.

## I.    BACKGROUND AND RELEVANT FACTS

Plaintiff is the widow of the deceased, Trevor Howe. (Compl., [Docket No. 1], at ¶ 1). Mr. Howe began working for Defendant Barr[1] in July 2014, in Duluth, Minnesota. (Id. at ¶ 3). During his employment with Defendant Barr, Mr. Howe applied for and received group life insurance coverage under Defendant Plan. The life insurance benefits consisted of basic benefits

---

[1] Plaintiff asserts that Defendant Barr Engineering Co. (Defendant Barr) is a Minnesota corporation with its principal place of business in Minnesota, Defendant Barr Engineering General Welfare Wrap Plan (Plan Defendant or the Plan) is a Health Welfare Benefit Plan providing welfare benefits for the benefit of Defendant Barr's employees, and Defendant Payflex is a corporation incorporated under the laws of Nebraska with its principal place of business in Nebraska. (Id.).

in the amount of $49,000.00 and supplemental coverage in the amount of $147,000.00, totaling $196,000.00. (Id. at ¶ 4). Plaintiff is the sole beneficiary of the insurance benefits in the event of Mr. Howe's death under the Plan.

The Plan consists of the Barr Engineering Company's General Welfare Wrap Plan, as well as, the attachments thereto, including the Plan Booklet.[2] The Plan Booklet consists of the documents attached to the Barr Engineering Company's General Welfare Wrap Plan.[3]

Under the Life Insurance General Provisions heading, the Plan contains the following:

**LIFE INSURANCE CONTINUATION RIGHTS**

If you are an employee, you have the right to continue life insurance for yourself and your dependents if this insurance terminates because you have:

- voluntarily or involuntarily terminated employment; or
- been laid off.

There is no continuation if:

- you end employment because of gross misconduct; or
- the Summary of Benefits is terminated.

The Employer Must inform you of:

- your right to continue life insurance;
- the monthly premium amount you must send to your Employer;
- the manner in which payment is to be made;
- the office of the Employer payment is to be made or sent; and
- the time the payments are due to your Employer.

* * *

Life insurance will stop when the first of the following occurs:

- the end of an 18 month period from the date your employment terminated or the date of your layoff.
- the date you obtained life insurance under another group policy.

---

[2] Plaintiff filed the Barr Engineering Company General Welfare Plan, as well as, its attachments, including the Plan Booklet, contemporaneously with her Complaint as Exhibit A to the Complaint. [Docket No. 1-1].
[3] The court refers to the Barr Engineering Company General Welfare Plan, as well as, the Plan Booklet collectively as the Plan.

- the date the Summary of Benefits terminates.

\* \* \*

When life insurance stops on one of the dates above, the Life Conversion Privilege will apply.

(Id. at Exhibit A at 55).

Regarding the Conversion Privilege, the Plan provides the following:

**WHAT INSURANCE IS AVAILABLE WHEN COVERAGE ENDS? (CONVERSION PRIVILEGE)**

When coverage ends under the plan, you and your dependents can convert your coverages to individual life polices, without evidence of insurability. The maximum amounts that you can convert are the amounts you and your dependents are insured for under the plan. You may convert a lower amount of life insurance.

You and your dependents must apply for individual life insurance under this life conversion privilege and pay the first premium within 31 days after the date:

- your employment terminates; or
- you or your dependents no longer are eligible to participate in the coverage of the plan.

(Id. at Exhibit A at 56).

Defendant Barr is the Plan administrator and the named fiduciary under the Plan. (Compl., [Docket No. 1], at ¶ 3; Exhibit A at 5–6). Plaintiff alleges that the Plan is "funded" by Defendant Unum. (Compl., [Docket No. 1], at ¶ 3). Plaintiff also asserts that Defendant PayFlex was an agent of Defendant Barr under the Plan at all times relevant to the present case. (Id.).

On September 11, 2014, Mr. Howe left his employment with Defendant Barr, and he accepted a position at Independent School District 709 (the "School District"). (Id. at ¶ 5). On October 27, 2014, Mr. Howe applied for group life insurance from Madison National Life Insurance thru the School District. (Id. at ¶ 6).

In an email dated September 25, 2014, sent to Defendant PayFlex, Mr. Howe wrote:

> Hello my name is Trevor Howe my last 4 SSN's are [XXXX] my zip code is 55808. I did not want to select the family medical when I selected my benefits and so I would like to drop just the family medical effective 9/12/14. I want to keep my single medical at I believe was $500 as well as my Base Life 1x Salary, Employee Life Insurance, and Spouse Life Insurance.

(Exhibit G, [Docket No. 8], at 1).[4] In an email dated December 17, 2014, which Mr. Howe sent to Defendant PayFlex, Mr. Howe identified himself and wrote:

> I would like to drop my medical plan effective Oct 1st 2014. I have been waiting on my new insurance to kick in with my new job and it has now and is effective starting October 1st 2014.
>
> I want to keep the following:
> Barr Engineering Base Life 1x Salary        9/12/2014 3/11/2016 1 Single $4.95
> Barr Engineering Employee Life Insurance  9/12/2014 3/11/2016 1 Single $14.85
> Barr Engineering Spouse Life Insurance      9/12/2014 3/11/2016 1 Single $3.79

(Id. at 2).

In October 2014, Mr. Howe was diagnosed with bile duct cancer. (Compl., [Docket No. 1], at ¶ 7). On November 1, 2014, Mr. Howe took a leave of absence from his new employer, the School District, due to his declining health. (Id.). In late 2014, and early 2015, Mr. Howe underwent chemo and radiation treatment, and on April 17, 2015, he underwent a liver transplant. (Id.). Plaintiff asserts that due to his "uncertain health" it was important to Mr. Howe to maintain life insurance with Unum in addition to his group life insurance thru the School District. (Id. at ¶ 18).

In an email dated January 7, 2015, Mr. Howe requested that he be given a refund for his "medical plan" because his new medical plan with the School District was "effective Oct 1st." (Exhibit G, [Docket No. 8], at 3]). He explained that he only continued his medical coverage under the Plan until he got his actual insurance card under his new medical plan, and he had been

---

[4] The correspondence between Plaintiff and Defendants referenced in this Complaint are quoted throughout Plaintiff's Complaint, and they were attached to the Complaint as Exhibits C though H. The following day they were refiled with the appropriate personal identification information redacted. [Docket No. 8].

informed that he would be refunded back to the new insurance's effective date. (Id.). In addition to requesting a refund, he also requested a complete history of the charges and credits applied to his account. (Id.).

In a letter dated January 22, 2015, Defendant PayFlex notified Mr. Howe that his participation in the "COBRA Continuation Plan" was terminated on November 30, 2014, including his Barr Engineering Full Feature Medical Plan, Barr Engineering Base Life 1x Salary, Barr Engineering Employee Life, and Barr Engineering Spouse Life Insurance. (Exhibit H [Docket No. 8]). The letter stated that the coverage was being terminated as a "Final Termination Per Written Member Request" indicating that it was done at Mr. Howe's request. (Id.).

In an email dated February 19, 2015, Mr. Howe informed Defendant PayFlex that he was still waiting on a refund for his medical coverage and that the cancellation of his Barr Engineering Base Life 1x Salary, Barr Engineering Employee Life, and Barr Engineering Spouse Life Insurance was in error. (Exhibit G, [Docket No. 8], at 4). In the email, Mr. Howe also wrote that:

> Back on October 10th 2014 I called and spoke with a gal named Kelly in regards to my concerns of have dual insurance because I started a new job and I would be getting new medical insurance. My new insurance would be effective October 1st 2014 however I stated that I would not be receiving my new insurance card until potentially December. I asked Kelly about this issue because I wanted to make sure that I would get my full refund for the months of October and November until I received my new insurance card and [k]new that I had effective new insurance. I was told that there would be not [sic] problem and that I would get refunded for the months I was waiting for my new insurance card back-dated to October 1st.
>
> When I sent the email to cancel "JUST" my medical and to "KEEP" my other 3 benefits, which included Barr Engineering Base Life 1x Salary, Barr Engineering Employee Life Insurance, and Barr Engineering Spouse Life Insurance. (I have attached and forwarded this email again to you to prove that this is what I requested) Some one [sic] from your department cancelled everything—Which is not what I requested!

(Id.). Mr. Howe summarized in his email that "[b]ottom line I never wanted my other 3 benefits terminated—I am going to be sending a check to activated [sic] the 3 benefits your people terminated and reinstated once I send a check but I can't do this until I know the amount[.]" (Id. at 7). Mr. Howe further asserted in his email that he wanted "to make sure that my other 3 benefits do not show as if I just started them in February but that they have been active since I originally activated my cobra coverage from the start date." (Id.).

Subsequent to this email exchange with Defendant PayFlex, Mr. Howe's life insurance benefits were reinstated, and he continued to make premium payments which were accepted. (Compl., [Docket No. 1], at ¶ 22).

On September 10, 2015, Mr. Howe underwent a second attempted liver transplant procedure, unfortunately, he died during the procedure. (Id. at ¶ 8, Exhibit B [Docket No. 8]).

Subsequent to Mr. Howe's death, Plaintiff made a claim for the insurance benefits under the Plan as Mr. Howe's sole beneficiary. (Compl., [Docket No. 1], at ¶ 9). In a letter dated October 26, 2015, Defendant Unum denied Plaintiff's claim. (Id. at ¶ 10). That letter provided, in part, that:

> The policy states that when an employee terminates their employment, they have the right to continue their life insurance for a period of up to 18 months. However, the policy also states that if an employee chooses to continue life insurance, the insurance will stop on the date that employee obtains life insurance under another group policy.
>
> [Defendant Barr] indicated that Trevor Howe ended his employment on September 11, 2014. Information received from Independent School District No. 709, indicates that Trevor was hired on September 04, 2014 and enrolled in life insurance coverage under their group policy on October 27, 2014. Therefore, because Trevor obtained life insurance under another group policy, the life insurance he chose to continue under [Defendant Barr's] group policy ended the day he became insured through Independent School District No. 709.
>
> For these reasons, the benefit is not payable.

(Exhibit C, [Docket No. 8], at 2).

In a letter dated November 4, 2015, Defendant Barr informed Plaintiff that Defendant Barr had received a letter informing it that Defendant Unum had denied Plaintiff's benefit claim. (Exhibit E [Docket No. 8]). The letter further informed Plaintiff that Defendant Barr would "make sure that the premium that was paid for Barr's life insurance policy following the time you had coverage under the school district will be reimbursed to you in full." (Id.). The letter stated that the payment would be mailed from Defendant "PayFlex, [Defendant] Barr's COBRA administrator in the next couple weeks." (Id.).

In a letter dated November 6, 2015, Defendant PayFlex informed Plaintiff that the participation in the continuation Plan, including the "Base Life 1x Salary, Employee Life Insurance, and Spouse Life Insurance" policies, had been cancelled as of September 30, 2015. (Exhibit D [Docket No. 8]).

On January 21, 2016, Plaintiff appealed Defendant Unum's denial of Plaintiff's claim to Unum's Appeal Unit. (Id. at ¶ 14). That appeal was denied in a letter dated February 1, 2016. (Exhibit F [Docket No. 8]). That letter stated that the Unum policy had terminated on October 27, 2014, the date Mr. Howe became insured under the group policy at the School District. (Id.). In response to Plaintiff's concerns and assertions—which mirror the assertions made in the present Complaint—Defendant Unum explained that:

> This insurance plan is a self-accounting plan. Under the terms of the Policy, the Employer is responsible for providing Unum with information about employees who are eligible to be insured, whose amounts of coverage change, and/or whose coverage ends. The Employer/Unum's policy holder maintains responsibility for administrative tasks to include the enrollment of employees and associated premium billing/accounting. The Employer remits a lump sum monthly premium payment to Unum. Unum is not provided with a list of individual employees associated with each premium received under the group policy.

[Defendant PayFlex] acted as an agent for the Employer ([Defendant Barr]) when they processed his request (September/December 2014 emails) to continue his life insurance under [Defendant Barr's] group policy. They did not act as an agent for Unum.

Unum relies on the information submitted by the Employer concerning their payment of premiums and for whom the premiums are being paid. Neither the third party benefit administrators nor the Employer's actions effect coverage for Mr. Howe that is in conflict with the policy provisions.

We are sympathetic to [Plaintiff's] situation and circumstances. However, Unum must administer coverage/benefits in accordance with the specific terms and provisions of the policy.

Based on the above findings, a life insurance benefit is not payable. Thus, it is appropriate to uphold the prior determination on appeal.

(Id.).

Following the denial of her appeal to Defendant Unum, Plaintiff initiated the present action on July 17, 2017, by filing her Complaint. [Docket No. 1].

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  In addressing a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim, the Court assumes as true the factual allegations in the complaint, and it construes all reasonable inferences from those facts in the light most favorable to the non-moving party. Great Lakes Gas Transmissions Ltd. P'ship v. Essar Steel Minnesota, LLC, 871 F. Supp. 2d 843, 850 (D. Minn. 2012) (citing Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008)); see, Riley v. St. Louis County of Mo., 153 F.3d 627, 629 (8th Cir. 1998); Maki v. Allete, Inc., 383 F.3d 740, 742 (8th Cir. 2004).

While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, the non-moving party's "obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted). The complaint must "state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," but in contrast, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556–67); see, Great Lakes Gas Transmissions Ltd. P'ship, 871 F. Supp. 2d at 850. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 664. When courts undertake the "context-specific task" of determining whether a plaintiff's allegations "nudge" its claims against a defendant "across the line from conceivable to plausible," they may disregard legal conclusions that are couched as factual allegations. See, Iqbal, 556 U.S. at 678–81.

Generally, in evaluating a complaint, materials outside the pleadings cannot be considered on a motion to dismiss. Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999). However, a court "may consider the pleadings themselves, material embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." Mills v. City of Grand Forks, 614 F.3d 495, 498 (8th Cir. 2010) (citing Porous Media Corp., 186 F.3d at 1079).

## III.    DEFENDANTS' MOTIONS TO DISMISS. [DOCKET NOS. 29, 35].

The two Barr Defendants, as well as, Defendant PayFlex all move this Court to dismiss Plaintiff's Complaint against them in its entirety. The Barr Defendants and Defendant PayFlex (collectively Defendants) argue that Plaintiff's state law claims are preempted by ERISA, and that Plaintiff's claim for breach of fiduciary duties under ERISA fails to state a claim upon which

relief may be granted. (Barr Defs.' Mem., [Docket No. 30], at 5–25; Def. PayFlex's Mem., [Docket No. 37], at 4–12).

### A. Plaintiff's Claims

At Count I of her Complaint, [Docket No. 1, Plaintiff asserts a cause of action alleging that Defendant Barr and Defendant PayFlex breached their fiduciary duties under ERISA. In her Complaint, [Docket No. 1], it appeared ostensibly that Plaintiff also attempted to raise five Counts based on state law at Counts II–VI.

Plaintiff has now clarified, at the motions hearing regarding the present motions, that she is <u>not</u> raising any independent state law claims. (October 27, 2017, Motions Hearing, Digital Recording at 2:02–2:06 p.m.). Instead, she asserted that Counts II–IV are based on federal common law in ERISA matters. Upon inquiry, her counsel relied for her pleading of Counts II–IV on the cases set out in Plaintiff Memorandum in Opposition to the present motions. (October 27, 2017, Motions Hearing, Digital Recording at 2:04–2:06 p.m.).

Plaintiff now asserts that Count IV of her Complaint seeks "a surcharge against defendants based on unjust enrichment" which Plaintiff asserts is "'appropriate equitable' relief under ERISA § 502(a)(3), following the Supreme Court's decision in *Cigna Corp. v. Amara*, 131 S.Ct. 1866 (2011)." The Court's review of <u>Amara</u>, however, leads it to conclude that a surcharge is a remedy available to parties in ERISA matters based on a violation of a breach of fiduciary duty. <u>See</u>, <u>Cigna Corp. v. Amara</u>, 563 U.S. 421, 442 (2011) ("The surcharge **remedy** extended to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary.") (emphasis added); <u>Silva v. Metro Life Ins. Co.</u>, 762 F.3d 711, 720 (8th Cir. 2014) ("In <u>Amara</u>, the Supreme Court identified three possible 'equitable' theories of recovery under § 1132(a)(3) **for an administrator's breach of fiduciary duty**: surcharge, reformation,

and estoppel.") (emphasis added). Therefore, the paragraphs of Plaintiff's Complaint under the Count IV heading are not a separate cause of action under ERISA but are instead an additional or alternative remedy Plaintiff seeks based on her breach of fiduciary duties claim. Plaintiff's claim for surcharge relief only survives if Plaintiff demonstrates a breach of a fiduciary duty. See, Silva v. Metro Life Ins. Co., 762 F.3d 711, 720 (8th Cir. 2014). Accordingly, a discussion of a surcharge remedy is only appropriate upon a potentially successful showing a breach of fiduciary duty which is discussed below.

Plaintiff further asserts that Count V is not a state law claim but is instead seeking declaratory relief under ERISA. While Plaintiff labels her claim for declaratory relief as a separate cause of action, a claim for declaratory judgment is not an independent cause of action. Rather, it serves simply as a request for a specific form of relief that is dependent on the Court determining that Defendants are liable for the actions alleged in Plaintiff's Complaint. See, Essling's Homes Plus, Inc. v. City of St. Paul, 356 F. Supp. 2d 971, 984 (D. Minn. 2004) ("A successful action for declaratory judgment requires a viable underlying cause of action."). Count V of Plaintiff's Complaint seeking declaratory relief survives only by the success and failure of Plaintiff's underlying ERISA fiduciary duties claim, and the Court will not evaluate its merits as an independent cause of action. See, Zutz v. Nelson, 601 F.3d 842, 850 (8th Cir. 2010) ("the Declaratory Judgment Act . . . does not provide an independent basis for federal jurisdiction") (quoting Victor Foods, Inc. v. Crossroads Econ. Dev., 977 F.2d 1224, 1227 (8th Cir. 1992) (citation omitted)); see also, Essling's Homes Plus, Inc., 356 F. Supp. 2d at 984 ("A successful action for declaratory judgment requires a viable underlying cause of action.").

Finally, Plaintiff now asserts that Counts II, III, and VI "set forth the elements of" and support "a federal common law claim for estoppel in an ERISA matter." (Plf.'s Mem., [Docket No. 42], at 19–22). This assertion will be addressed below as well.

### B. ERISA Fiduciary Duties Claims

Plaintiff alleges that the Defendants breached their fiduciary duties:

(a) by failing to take the necessary steps to ensure that Trevor Howe complied with any required documentation to keep, by conversion or otherwise, the life insurance benefits available under the Plan;
(b) by failing to take the necessary steps not to accept premiums for insurance coverage for which they now claim he was not eligible; [and]
(c) by failing their obligation to properly advise Trevor Howe regarding his rights under the Plan and in misrepresenting to Trevor Howe that he had coverage when they reinstated his coverage under the Plan and continued to accept premiums from Trevor Howe for life insurance until after his death.

(Compl., [Docket No. 1], at ¶ 34). Construing Plaintiff's allegations in her favor, Plaintiff argues that Defendants violated their duty of loyalty when they failed to ensure Mr. Howe maintained properly life insurance, as well as, when they continued to accept premiums after Mr. Howe's coverage had terminated, and Defendants violated their duty to disclose when they failed to re-inform Mr. Howe that his continuation coverage terminated when he enrolled in a second group life insurance plan, as well as, when they failed to inform Mr. Howe of the conversion coverage procedure upon his enrolling in a second group life insurance plan. (See, Id.).

ERISA provides that a plan's fiduciary shall discharge its duties:

With respect to a plan solely in the interest of the participants and beneficiaries and—
(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and
(ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such

12

matter would use in the conduct of an enterprise of a like character and with like aims;

(C) by diversifying the investments of the plan as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III.

29 U.S.C. § 1104(a)(1). These duties set forth in 29 U.S.C. § 1104(a)(1) are commonly referred to as the duty of loyalty, the duty of prudence, the duty to diversify, and the duty to follow the terms of the plan. See, Brown v. American Life Holdings, Inc., 190 F.3d 856, 859 (8th Cir. 1999).

To plead a breach of fiduciary duty claim under ERISA, Plaintiff must allege that (1) defendant was a fiduciary of the plan; (2) defendant was acting in that capacity; and (3) defendants breached a fiduciary duty. In re Xcel Energy, Inc., Sec., Derivative & ERISA Litig., 312 F. Supp. 2d 1165, 1175 (D. Minn. 2004) (citing 29 U.S.C. § 1109). In the present case, Plaintiff alleges that Defendants violated their duty of loyalty and their duty to disclose or inform—which, as discussed below, is found within the duty of loyalty.

It is uncontroversial that the duty of loyalty "embodies the 'obligation to deal fairly and honestly with all plan members.'" Christensen v. The Qwest Pension Plan, 462 F.3d 913, 917 (8th Cir. 2006) (quoting Shea v. Esensten, 107 F.3d 625, 628 (8th Cir. 1997)). It is a breach of that duty of loyalty when an ERISA plan administrator "participates 'knowingly and significantly in deceiving a plan's beneficiaries in order to save the employer money at the beneficiaries' expense.'" Christensen, 462 F.3d at 917 (quoting Varity Corp. v. Howe, 516 U.S. 489, 506 (1996)).

13

In Christensen, the plan participant alleged that the plan administrators breached their fiduciary duties by providing repeated incorrect pension benefit estimates leading the participant to believe he would receive more benefits that he actually did upon retirement. Id. The estimates in Christensen were incorrect because the automated system providing the estimates contained incorrect information pertaining to plaintiff's "Pension Band Number" which when corrected reduced the benefits due to plaintiff. Id. at 916. However, the Court there noted the absence of evidence that any employee of any fiduciary knew of the band number error until a manual audit was performed after plaintiff retired. Id. at 916–17. The Eighth Circuit Court of Appeals held that the plaintiff's claim that the plan administrators breached their duty of loyalty failed because there was no evidence that the plan administrators "knowingly provided false or materially overstated estimates of his pensions benefit." Id.

The same reasoning as in Christensen is appropriate in the present case. Here, Plaintiff has failed to point to any factual assertion in the Complaint or the attached exhibits demonstrating that Defendants participated in knowingly providing any false or misleading information to Mr. Howe.

Plaintiff may be attempting to argue that Defendants effectively provided false information to Mr. Howe when they reinstated his life insurance even after he had enrolled in the new group life insurance policy thru his new employer, the School District. However, this argument necessarily fails because Plaintiff fails to present any factual allegations permitting the reasonable inference that Defendants actually knew Plaintiff had enrolled in a new group life insurance plan when they reinstated his life benefits rather than what the exhibits to the Complaint show which is the Defendants first became actually aware of new life insurance policy only after Mr. Howe's death.

For instance, in an email dated December 17, 2014, Mr. Howe informed Defendant PayFlex that he "would like to drop [his] **medical plan** effective Oct 1st 2014" and that he had "been waiting on [his] new insurance to kick in with my new job[.]" In a separate paragraph, Mr. Howe stated that he wanted to "keep" his life insurance policies. (Exhibit G, [Docket No. 8], at 2). Nothing in the email, in any way, informs Defendants that Mr. Howe had enrolled in a second group life insurance policy thru his new employer, the School District. Moreover, an inference that the email somehow put Defendants on notice that Mr. Howe had enrolled in the School District group life insurance policy would be unreasonable given that the dates Mr. Howe associated with the life insurance he wanted to "keep" were consistent with a continuation policy as opposed to a conversion policy. Mr. Howe wrote that he wanted to "keep" his Base Life Salary Insurance "**9/12/2014 3/11/2016**," his Employee Life Insurance "**9/12/2014 3/11/2016**," and his Spouse Life Insurance "**9/12/2014 3/11/2016**." (Id.). These dates—which were provided by Mr. Howe—are consistent with the dates a continuation policy would have then been in effect. It would be unreasonable to infer that the December 17, 2014, email notified Defendants in any way that Mr. Howe had in fact also enrolled in a second group life insurance policy. Likewise, in a subsequent email dated January 7, 2015, Mr. Howe specifically notes that he is talking about a credit for his "medical plan," and he only references that medical plan credit throughout the email which is otherwise silent as to life insurance benefits. (Exhibit G, [Docket No. 8], at 3).

In an email dated February 19, 2015, Mr. Howe informed Defendant PayFlex that he was still waiting on a refund for his medical coverage and that the cancellation of his Barr Engineering Base Life 1x Salary, Barr Engineering Employee Life, and Barr Engineering Spouse Life Insurance was in error. (Exhibit G, [Docket No. 8], at 4). In the email, Mr. Howe also wrote

that "[b]ack on October 10th 2014 [he] called and spoke with a gal named Kelly in regards to my concerns of have [sic] dual insurance because I started a new job and I would be getting new **medical insurance**." (Id.). Although Mr. Howe mentioned "dual insurance," in the context of that same sentence it is evident he specifically refers to his medical insurance. Again, nothing in that February 19, 2015, email can be reasonably inferred as putting Defendants on notice that Mr. Howe had actually in fact enrolled in a second group life insurance policy thru his new employer, the School District. While that email did inform Defendant PayFlex that the cancellation of Mr. Howe's life insurance policies had not been included in his earlier email regarding cancelling medical coverage, it also specifically notes that he wanted "to make sure that my other 3 benefits do not show as if I just started them in February but that they have been active since I originally activated my cobra coverage from the start date." (Id.) (emphasis added). Such a specific reference to back dated continuance of Cobra rights regarding prior life insurance coverage thru the Plan militates against a reasonable inference that the email somehow informed Defendant that Mr. Howe had in fact obtained new life insurance benefits thru his employer, the School District, and now, wanted to convert his group policy to an individual policy: which according to the terms of the Plan, he was required to do if he wanted to have life insurance coverage under the Plan after enrolling in a new second group life insurance plan. Additionally, Mr. Howe's February 19, 2015, email contains and attaches the December 17, 2014, email which contains the dates that are consistent merely with a continuation policy as discussed above, i.e. "9/12/2014 3/11/2016." (Id.).

Plaintiff also argues that Defendant Payflex's accidental cancelation of Mr. Howe's life insurance policies combined with the subsequent reinstatement of those polices constitutes knowingly providing false information. (See, Plf.'s Mem., [Docket No. 42], at 17–18). Plaintiff

appears to assert that at the point in time the policies were reinstated Mr. Howe was ineligible for continuation coverage due to his enrollment in the School District group life insurance plan, and therefore, Plaintiff argues, the reinstatement of those policies constituted knowingly providing false information. However, as already discussed above there is nothing in the factual allegations of the Complaint, or the attached exhibits, upon which a reasonable inference may be made that Defendants were aware at that time that Mr. Howe had actually in fact enrolled in a second group life insurance policy thru his new employer.

Moreover, the Eighth Circuit Court of Appeals has held that a mistake in the administration of an ERISA plan "is not a violation of the duty of loyalty absent evidence that plan administrators acted in the interest of someone other than participants and beneficiaries." Christensen, 462 F.3d at 917–18. The present record makes clear that the temporary cancellation of Mr. Howe's life insurance policies was a mistake. (See, Compl. [Docket No. 1]). Plaintiff herself specifically notes that the polices "had apparently been **mistakenly** terminated," and when generally referring to the factual allegations in her Complaint, asserted that there had been "**mistakes** made with respect to Trevor Howe's life insurance coverage. (Id. at ¶¶ 22, 27) (emphasis added). The record is entirely devoid of any factual allegations or exhibits demonstrating that Defendant PayFlex's—when it mistakenly terminated Mr. Howe's life insurance policies—"acted in the interest of someone other than participants and beneficiaries." See, Christensen, 462 F.3d at 917–18. Accordingly, the temporary cancellation of Mr. Howe's life insurance policy cannot be the basis for a breach of fiduciary duty of loyalty.

In addition to the duty not to knowingly and intentionally mislead plan participants, ERISA fiduciaries, under certain circumstances, have a duty to affirmatively disclose information. Anderson v. Resolution Trust Corp., 66 F.3d 956, 960 (8th Cir. 1995). "[A]

fiduciary has a duty to inform when it knows that silence may be harmful, and cannot remain silent if it knows or should know that the beneficiary is laboring under a material misunderstanding of plan benefits." Kalda v. Sioux Valley Physicians Partners, Inc., 481 F.3d 639, 644 (8th Cir. 2007) (internal citations omitted). A fiduciary's duty of loyalty "requires a fiduciary to disclose any material information that could adversely affect a participant's interest." Id. However, a fiduciary does not have a duty to individually notify participants of the impact of general terms of the plan upon the participant as a fiduciary cannot be expected to anticipate the individualized concerns of every employee. See, Maxa v. John Alden Life Ins. Co., 972 F.2d 980, 985–86 (8th Cir. 1992). The rationale for this "is that fiduciaries should be able to rely upon the detailed and uniform guidance ERISA provides with regard to disclosure requirements rather than bearing the practically impossible burden of anticipating, and comprehensively addressing, the individualized concerns of thousands of employees, especially without notice of those concerns." Childers v. N.W. Airlines, Inc., 688 F. Supp. 1357, 1362 (D. Minn. 1988); Maxa v. John Alden Life Ins. Co., 972 F.2d 980, 985–86 (8th Cir. 1992).

        In the present case, Plaintiff argues that Defendants' alleged failure to inform Mr. Howe that by enrolling in a second group life insurance policy thru his new employer it would terminate his continued enrollment in the first group life insurance policy thru the Plan, as well as, their alleged failure to advise him of his conversion rights upon actual enrollment in that second group life insurance plan violated their fiduciary duty to disclose. Plaintiff, however, fails to present any factual allegations or exhibits which would support a reasonable inference that Defendants actually knew that remaining silent as to the conversion rights would be harmful or that Defendant's knew Mr. Howe was laboring under a material misunderstanding of the Plan benefits. As discussed at length above, nothing in any of the communications between Mr. Howe

and Defendants attached as exhibits to the Complaint operate as the basis for a reasonable inference that Defendant actually knew at any time prior to his death that Mr. Howe had in fact enrolled in a second group life insurance plan thru his new employer. Moreover, nothing in the correspondence between Defendants and Mr. Howe supports the reasonable inference that Mr. Howe was operating under any kind of misunderstanding of the plan benefits. Each of Mr. Howe's emails explains the benefits he would like to keep, and the dates he referenced in those emails demonstrated, if anything, that he understood the available time frame for the continuation of the available coverage.

Further, in the context of the allegations of the Complaint and exhibits attached in the present case, the Defendants had no specific knowledge about Mr. Howe's life insurance benefits thru his new employer, and a fiduciary does not have a duty to individually notify participants of the impact of general terms of the plan upon the participant as a fiduciary cannot be expected to anticipate the individualized concerns of employees. See, Maxa v. John Alden Life Ins. Co., 972 F.2d 980, 985–86 (8th Cir. 1992) ("[t]he great majority of court . . . have not imposed upon an ERISA plan fiduciary the duty individually to notify participants . . . of the specific impact of the general terms of the plan upon them," and finding no fiduciary duty "individually to warn, upon their sixty-fifth birthdays, each and all of the members of the plans . . . that their benefits would be reduced according to the plan's coordination of benefits provision unless they enroll in Medicare" even where the fiduciary knew plaintiff had turned sixty-five years old and reduced his premium accordingly); Howard v. Gleason Corp., 901 F.2d 1154, 1161 (2d Cir. 1990) ("We agree with plaintiff that employers could, with little burden or expense, include notices in employees' final paychecks reminding them that in order to continue life insurance coverage,

they must exercise their conversion privileges. However, ERISA does not mandate such notice.").

Additionally, Plaintiff's breach of fiduciary duty claim based on a failure to inform is without merit because an ERISA fiduciary satisfies its duty to inform where its employee benefit plan documentation itself informs participants and beneficiaries of their rights and obligations. See, e.g., Ince v. Aetna Health Mgmt., 173 F.3d 672, 676 (8th Cir. 1999) (finding that plaintiff's breach of fiduciary duty claim failed where summary plan description plainly and accurately set forth a method of calculating and asserting subrogation claims of which plaintiff claimed she was not specifically informed); Howard, 901 F.2d at 1159–61 (finding no breach of fiduciary duty to inform plaintiff of life insurance conversion privilege where decedent received notice of conversion privilege when he received ERISA plan documentation clearly setting it out). In the present case, Plaintiff has not alleged that Mr. Howe failed to receive the operative Plan documents. Plaintiff has also failed to allege that any of the provisions in the Plan documents provided were themselves anything other than plain and accurate.

Accordingly, Plaintiff has failed to plead any factual allegations supporting its allegation that Defendants breached their fiduciary duty of loyalty or their imbedded duty therein to disclose and inform.

### C.  Promissory Estoppel

Lastly, Plaintiff contends that Defendants should be estopped from denying life insurance benefits now because Defendants misled Mr. Howe about his coverage and eligibility. Plaintiff argues that Defendant should be estopped (1) because Defendants' representations to Mr. Howe "amount to a representation by [Defendants] of material fact . . . that Trevor Howe could continue to 'keep' his coverage and that he had life insurance with Unum at the time of his

20

death;" (2) because Defendants "were aware" that Mr. Howe was obtaining new life insurance and would need to "convert" his "coverage within 31 days of obtaining life insurance from his new employer in order to 'keep' his coverage with Unum;" (3) because Mr. Howe "had a right to believe and rely on the language and conduct of" Defendants given his request to "keep" his coverage, Defendant continued acceptance of premiums, and that Defendants "mistakenly terminated [his] coverage and then reinstated him without doing any inquiry as to whether he was eligible at the time;" (4) because Mr. Howe "was unaware of his need to convert his insurance in order to 'keep' his insurance as demonstrated by his continued payment of premiums up until the time of his death;" and (5) because Mr. Howe "detrimentally relied upon the defendants' misrepresentations and omission by continuing to pay premiums up until the time of his death, and in foregoing other steps he might have taken to maintain his coverage and/or seek coverage elsewhere, had he known defendants would deny coverage after his death." (Plf.'s Mem., [Docket No. 42], at 20–22; Compl., [Docket No. 1], at ¶¶ 20–24, 40, 44, 54, 55).

Plaintiff's claim for estoppel, however, fails on the record now before the Court. First, Plaintiff's estoppel claim fails because "estoppel principles cannot be used to obtain ERISA benefits that are not payable under the terms of the ERISA plan." Fink v. Union Cent. Life. Ins. Co., 94 F.3d 489, 492 (8th Cir. 1996) (citing Jensen v. SIPCO, Inc., 38 F.3d 945, 953 (8th Cir. 1994), cert. denied, 514 U.S. 1050 (1995)). Moreover, "[c]ourts may apply the doctrine of estoppel in ERISA cases only to interpret ambiguous plan terms." Fink, 94 F.3d at 492 (citing Slice v. Sons of Norway, 34 F.3d 630, 634–35 (8th Cir. 1994)).

In the present case, however, Plaintiff does not argue that the plan terms themselves are ambiguous. Plaintiff does not allege that any ambiguous term of the Plan led Mr. Howe to believe he was covered under the Plan. See, gen., Id. Instead, a review of Plaintiff's Complaint,

[Docket No. 1], clearly demonstrates that Plaintiff is alleging Defendant's conduct and representations led Mr. Howe to believe he was covered for life insurance under the Plan at the time of his death. (See, Compl. [Docket No. 1]). Even if Plaintiff is attempting to support her estoppel claim with Defendants' alleged misrepresentations, that argument would fail because even "[w]hen the alleged misrepresentation flatly contradicts the unambiguous language of the plan, an estoppel claim is not available." Slice v. Sons of Norway, 34 F.3d 630, 634–35 (8th Cir. 1994); see, Algren v. Pirelle Armstrong Tire Corporation, 197 F.3d 915, 916–17 (8th Cir. 1999). Plaintiff here does not allege in her Complaint that there is any ambiguous language in the documents or terms of the Plan itself.

During argument at the motions hearing, Plaintiff's counsel merely speculated that if Plaintiff's new life insurance policy thru his new employer was retroactively applied from the date of approval to the date of application it "would create arguably an ambiguity in the [Plan] because the policy says you have thirty-one days from the effective date of it. Presumably, they mean you have thirty-one days from the date you are told you have your new insurance . . . ." (October 27, 2017, Motions Hearing, Digital Recording at 2:10–2:12 p.m.). By this argument, Plaintiff's counsel possibly seems to be suggesting that the motion to dismiss should be denied so that Plaintiff may look into whether or not the School District life insurance was even active at the time of Mr. Howe's death on the premise that if it were not then his life insurance benefits per the Plan would still have been in place under the terms of the Plan as of his death. This speculation, however, fails to raise an argument of an ambiguous Plan term necessary to apply the doctrine of estoppel for multiple reasons. First, neither the argument nor any factual assertions which would be necessary to support the argument are contained in Plaintiff's Complaint. [Docket No. 1]. In reviewing a motion to dismiss under Rule 12(b)(6), the Court is

limited to the facts contained in the complaint, material embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." Mills v. City of Grand Forks, 614 F.3d 495, 498 (8th Cir. 2010) (citing Porous Media Corp., 186 F.3d at 1079). This does not encompass speculative factual or argumentative assertions of counsel at a motions hearing. Moreover, the assertion is entirely based on pure supposition as there is nothing in the record now before the Court indicating that the new group life insurance policy Mr. Howe obtained from his new employer, the School District, was or was not retroactive to the date of application. To the contrary Plaintiff's Complaint, [Docket No. 1], specifically provides that the enrollment form for the School District group life insurance policy provided that "[c]overage is not effective until final approval is given," that it was approved sometime later, and that then Mr. Howe "became insured under the School District's group policy." (Compl., [Docket No. 1], at ¶ 6). Additionally, the Complaint, [Docket No. 1], is devoid of any factual assertion which would permit a reasonable inference that the School District life insurance Mr. Howe obtained did not become effective until less than thirty-one days before the date of Mr. Howe's death.

Accordingly, Plaintiff claim of estoppel necessarily fails under the present Rule 12(b)(6) analysis.

## IV.    CONCLUSION

Based on the foregoing reasons, all the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED THAT:**

1. Defendants Barr Engineering Co. and Barr Engineering Company General Welfare Plan's Motion to Dismiss, [Docket No. 29], be **GRANTED**; and

2. Defendant PayFlex System USA, Inc.'s Motion to Dismiss, [Docket No. 35], be

**GRANTED**.

Dated: December 6, 2017                                    s/Leo I. Brisbois
                                                          Leo I. Brisbois
                                                          U.S. MAGISTRATE JUDGE

# N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]"  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).